SUZANNE V. WIRTZ,

          Plaintiff,                      Case No. 05-40324

vs.                                HONORABLE PAUL V. GADOLA
                                   HONORABLE STEVEN D. PEPE

FORD MOTOR COMPANY, VISTEON
CORPORATION and AUTOMOTIVE
COMPONENTS HOLDINGS, LLC,

          Defendants.

_____/

## REPORT AND RECOMMENDATION

### I.    PROCEDURAL HISTORY

This is an action under the American with Disabilities Act ("ADA"), 42 U.S.C. § 12101

*et seq.*, for Defendants' failure to accommodate Plaintiff's incontinence at her job. On February

7, 2007, Defendants filed a motion for summary judgment under Fed. R. Civ. P 56(c) claiming

that there is no genuine issue of material fact and Defendants are entitled to judgment as a matter

of law (Dkt. #27). Plaintiff filed her response to Defendants' motion on March 7, 2007 (Dkt.

#30). On March 26, 2007, Defendants filed their reply to Plaintiff's response (Dkt. #35).

Defendants' motion was referred for report and recommendation on April 11, 2007, pursuant to

28 U.S.C. § 636(b)(1)(B). For the following reasons, **IT IS RECOMMENDED** that Defendants'

motion for summary judgment be **DENIED.**

### II.    BACKGROUND FACTS

#### A.    **Plaintiff's Employment History**

Plaintiff began her employment with Ford in 1994 at the Utica Plant as an hourly

employee in the Foam Division (Dkt. #27, Ex. A, pp. 27-28). As an hourly employee, she was represented by the UAW Local 400 and her employment was governed by a collective bargaining agreement. *Id.* at p. 32.

Plaintiff worked on conveyor lines in both the Foam and Door Panel Divisions (Dkt. #27, Ex. A, pp. 28-29; Ex. B, p. 59-60). Approximately a year before her last day worked, Plaintiff was assigned to the instrument panel line ("IP line") (Dkt. #27, Ex. A, p. 30). While on the IP line, Robert Kresevich ("Kresevich") became Plaintiff's supervisor. *Id.* at p. 49. Kresevich supervised Plaintiff for approximately four or five months in 2002 (Dkt. #27, Ex. C, pp. 11, 35-36). Kresevich's supervisor was Gary Janda ("Janda"). *Id.* at pp. 48, 64.

### B. Plaintiff's Alleged Disability

In August 1994, Plaintiff alleges that she began experiencing frequent and severe abdominal problems, including nausea, cramping, muscoskelatal spasms and bowel and bladder incontinence (Dkt. #21, ¶15). Her situation grew progressively worse until it became chronic, requiring constant medical treatment. *Id.* Plaintiff required more than 20 separate doctor visits for treatment of her condition during her employment with Defendants. *Id.* at ¶16. Medical professionals have offered various diagnoses for Plaintiff's condition, including irritable bowel syndrome and muscoskelatal spasms (Dkt. #21 at ¶17; Dkt. #30, Ex. B-F, Ex. I). All agree it is a permanent impairment with no known cure. *Id.* Plaintiff 's condition requires that she be able to use the bathroom immediately when needed as she lacks the physical ability to delay urination or evacuation. Failure to immediately use the bathroom upon need may result in incontinence and/or severe bladder and urinary tract infections ("UTI"). The UTI's cause her to have blood in her urine and to experience severe cramps (Dkt. #30, Ex. C).

This condition has also damaged Plaintiff's fallopian tubes, significantly decreasing her chance of becoming pregnant, and increasing her risk of ectopic pregnancy should she be able to conceive. According to Plaintiff, her physician indicated that:

> [sic] the severe scarring that I have in my body was caused from infection, and he believes that that infection was caused by the urinary tract infections, and so the scarring which has closed my tubes does not allow me to bear children or not – to reproduce, actually.

(Dkt. #30, Ex. A, p. 9-13).

Plaintiff has been unable to conceive at all since she had surgery to correct the damage to her fallopian tubes in 2002 (Dkt. #30, Ex. H).

Defendants argue that despite Plaintiff's alleged disability, she testified that she is able to engage in a variety of activities, including: sewing, gardening, reading, camping, fishing and hunting (Dkt. #27, Ex. A, p. 9, 10, 18, 21, 104, 105). Yet, Plaintiff qualified her ability to engage in activities by indicating "if I don't have immediate access to a restroom, I can't do any of those things." *Id.* at p. 11.

## C. The Production Line

While on the IP line, Plaintiff's bathroom breaks increased in frequency and duration (Dkt. #27, Ex. D, p. 38). When Plaintiff requested bathroom breaks, Kresevich would try to find a replacement for her (Dkt. #27, Ex. C, p. 27-28). Often, Plaintiff would take nearly five breaks in addition to the scheduled breaks and she would be gone for 10-15 minutes per break. *Id.* at 26, 56. On occasion, if Kresevich could not find a replacement, Plaintiff would stop the line and leave without notice. *Id.* at pp. 39-40. Plaintiff was disciplined at least once for this conduct prior to switching to the IP line (Dkt. #27, Ex. E). As a result of Plaintiff leaving the line for breaks, Defendants allege the line lost production (Dkt. #27, Ex. C, p. 36).

On her production line, Defendants claim that Plaintiff was the sole employee responsible for installing glove boxes into dashboards (Dkt. #27, Ex. C, p. 21). Under the collective bargaining agreement, Visteon provided IP line employees two 22 minute breaks and a 30 minute lunch, which afforded employees time to use the restroom. *Id*. at p. 22. Area coordinators were sometimes available to relieve employees for bathroom breaks between the scheduled break times (Dkt. #27, Ex. J, p. 37). Yet, Defendants contend that there was no "relief operation" for employees who needed to take additional breaks beyond those scheduled. *Id.* at p. 62.

Unlike the Foam and Door Panel lines where Plaintiff worked for a number of years and was permitted to take frequent breaks, Defendants allege that the IP line ran more quickly and contained fewer people (Dkt. #27, Ex. B, pp. 62-63). The IP department did not have utility people or floaters (Dkt. #27, Ex. K, p. 2). The only workers who are able to provide emergency relief for those on the IP line are area coordinators. *Id*. Unlike the repair people on the Door Panel and Foam Lines who only work if something is wrong, the area coordinators on the IP line must inspect each part that is produced on the IP line and/or make repairs (Dkt. #27, Ex. B, p. 63). Thus, when an area coordinator is pulled away from his/her job to provide relief to an IP line worker, the area coordinator is unable to perform his or her own inspections or repairs (Dkt. #27, Ex. C, p. 55). In contrast, a repair person on the Door Panel and/or Foam lines is only required to fix items needing repair, which leaves him/her with more time to provide relief to Door Panel and/or Foam assembly line workers (Dkt. #27, Ex. B, p. 63).

The IP assembly area had four area coordinators who were responsible for inspecting and repairing parts (Dkt. #27, Ex. C, p. 29). The area coordinators also sometimes relieved

employees on the line for unscheduled breaks or other emergencies. *Id.* Yet, Defendants claim the area coordinators could not provide regular relief because it would cause the backlog of their own work and cause problems with piling up of parts. *Id.* at p. 55.

Visteon requested that Plaintiff provide medical documentation supporting her medical restrictions. On May 9, 2002, Plaintiff submitted a doctor's note from her physician, Edward Pazuchowski, M.D., stating that she "must be able to utilize the bathroom as needed 5/9/01-8/9/02" (Dkt. #27, Ex. F). June Jones, M.D., the Plant's Chief physician, reviewed Plaintiff's restrictions and Kresevich, Janda, and Dr. Jones determined that Plaintiff could not perform the essential functions of the IP line position given her medical restrictions because it would not permit the company to effectively operate the assembly line (Dkt. #27, Ex. B, p. 26-27, 68-70).

On June 27, 2002, based upon Plaintiff's restrictions and her relatively low seniority, Dr. Jones recommended that Plaintiff be placed on a "no work available" status.[1] On July 26, 2002, Plaintiff submitted a note from Dr. Pazuchowski stating that she must be able to use the bathroom "permanently as needed" (Dkt. #27, Ex. G). Following this note, on July 31, 2002, Dr. Jones wrote a letter to Dr. Pazuchowski explaining that Plaintiff worked on an assembly line and requested that he be more specific as to Plaintiff's diagnosis and provide a justification for Plaintiff's permanent restriction (Dkt. #27, Ex. H). Dr. Pazuchowski failed to respond to Dr. Jones' letter (Dkt. #27, Ex. B, p. 37). During her medical leave, Plaintiff has submitted doctor's

---

[1] Employees who have occupational or personal restrictions that prevent them from working on the production line are placed on "no work available" status. (Dkt. #27, Ex. B, p. 18). A placement committee regularly reviews the employment status of Visteon's employees who have been placed on "no work available" status. *Id.*

notes updating her condition and stating that she has "musculolateral spasms" and that she needs to drink water and use the restroom every hour (Dkt. #30, Ex. B-F, Ex. I). These doctors' notes indicate that Plaintiff's condition continues as a permanent restriction. *Id.*

## III. ANALYSIS

### A. <u>**The Legal Standard**</u>

Under Fed. R. Civ. P. 56, summary judgment is to be entered if the moving party demonstrates there is no genuine issue as to any material fact. The Supreme Court has interpreted this to mean that summary judgment should be entered if the evidence is such that a reasonable jury could find only for the moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The moving party has "the burden of showing the absence of a genuine issue as to any material fact." *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157 (1970). *See also Lenz v. Erdmann Corp.*, 773 F.2d 62 (6th Cir. 1985). In resolving a summary judgment motion, the Court must view the evidence in the light most favorable to the non-moving party. *See Duchon v. Cajon Co.*, 791 F.2d 43, 46 (6th Cir. 1986); *Bouldis v. United States Suzuki Motor Corp.*, 711 F.2d 1319 (6th Cir. 1983). But as the Supreme Court wrote in *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986):

> [T]he plain language of Rule 56© mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial. The moving party is "entitled to a judgment as a matter of law" because the non-moving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof.

Moreover, when a motion for summary judgment is filed, the adverse party may not merely rely

"upon the mere allegations or denials of the adverse party's pleading, but . . . by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

## B. Factual Analysis

### 1. *Plaintiff's Disability*

A disability is defined by the ADA as "a physical or mental impairment that substantially limits one or more of the major life activities of such individual." 42 U.S.C. § 12102(2). To state a claim of disability discrimination under the ADA, a plaintiff must show that she is a disabled person within the meaning of the Act; that she is qualified with or without a reasonable accommodation to perform the essential functions of her job; and that she was discriminated against because of her disability. 42 U.S.C. §§ 12111(8), 12112(a). *McKay v. Toyota Motor Mfg., U.S.A., Inc*., 110 F.3d 369, 371 (6th Cir. 1997) (citing *Monette v. Elec. Data Sys. Corp*., 90 F.3d 1173, 1179 (6th Cir. 1996)). Under the statute, a person is also disabled if she "has a record of such impairment" or "does not have an impairment, but is regarded as having one." 42 U.S.C. § 12102(2).[2]

In *Toyota Mfg. Co. v. Williams*, 534 U.S. 184 (2002), the Supreme Court reiterated that "[m]erely having an impairment does not make one disabled for purposes of the ADA." *Id.* at 195. Rather, a plaintiff must also prove that the impairment limits a major life activity and that such limitation is substantial. *Id.* The Court noted that the terms "substantially limiting" and "major life activity" "need to be interpreted strictly to create a demanding standard for qualifying

---

[2] An individual has a record of impairment if she "has a history of, or has been misclassified as having, a mental or physical impairment that substantially limits one or more major life activities." 29 C.F.R. § 1630.2(k).

as disabled." *Id.* at 197. To meet these definitions, a plaintiff must show that she "has an impairment that prevents or severely restricts the individual from doing activities that are of central importance to most people's daily lives." *Id.* at 198. Further, "the ADA requires those claiming the Act's protection . . . to prove a disability by offering evidence that the extent of the limitation [caused by their impairment] in terms of their own experience … is substantial." *Id.* at 199. Accordingly, a court addressing the question of substantial limitation should consider "(1) the nature and severity of the impairment (2) the duration or expected duration of the impairment and (3) the permanent or long term impact or the expected permanent or long term impact of or resulting from the impairment." 29 C.F.R. § 1630.2(j)(2).

In this case, and viewing the evidence in the light most favorable to Plaintiff as this Court must do on a motion for summary judgment, Plaintiff has a documented physical impairment, which causes her to urinate approximately once per hour and to contract frequent and severe urinary tract infections if she is not able to utilize the restroom quickly. This condition has damaged Plaintiff's fallopian tubes, significantly decreasing her chance of becoming pregnant, and increasing her risk of ectopic pregnancy should she be able to conceive. Medical professionals have offered various diagnoses for Plaintiff's condition including colitis, irritable bowel syndrome, and/or gastroenteritis and muscoskelatal spasms (Dkt. #21, ¶ 17; Dkt. #30, Ex. B-F, Ex. I). All agree it is a permanent impairment with no known cure. *Id.* As a result, Plaintiff claims that she is substantially limited in the major life activities of "caring for one's self (ability to control one's own bowels and bladder), standing, walking and sitting for more than one hour at a time," and reproduction (Dkt. #21, ¶ 28).

Defendants argue that Plaintiff cannot establish that she has an impairment that substantially limits a major life activity (Dkt. #27, p. 7-9). They contend that Plaintiff concedes

that she is able to do a large number of life activities, including sewing, gardening, reading, camping, fishing, hunting, and cooking for herself and her husband (Dkt. #27, Ex. A, p. 9, 10, 18, 21, 104, 105). Moreover, they argue that Plaintiff provides no evidence, via deposition testimony or affidavit, to support her claims that her UTIs render her unable to walk, stand, work, or function at all until the infection clears or the frequency of these alleged symptoms. *See Cotter v. Ajilon Services, Inc.*, 287 F.3d 593, 598 (6th Cir. 2002) (the plaintiff's conclusory statements that his colitis restricted his ability to perform manual tasks such as lifting, bending, standing, and carrying things was not sufficient evidence from which a reasonable jury could infer that his digestive ailment substantially limited these major life activities). As such, Defendants argue that Plaintiff is not substantially limited.

Defendants further argue that numerous district courts have repeatedly held that urinary incontinence and/or the need to frequently use the restroom does not substantially limit a major life activity. *See, Cox v. Carrier Sales & Distrib.*, 2006 U.S. Dist. LEXIS 49705 at *32-41 (E.D. Tenn. July 20, 2006), adopted by, 2006 U.S. Dist. LEXIS 58426 (E.D. Tenn. Aug. 18, 2006) (holding that the plaintiff's diabetes which caused her to use the bathroom once an hour did not substantially limit a major life activity); *Swain v. Hillsborough County Sch. Bd.*, 146 F.3d 855, 858 (11th Cir. 1998) (holding that the plaintiff's need to frequently go to the bathroom based on a combination of ailments did not establish that the plaintiff had a disability under the ADA); *Martin v. AT&T Corp.*, 331 F. Supp. 2d 1274, 1299 (D. Colo. 2004) (the plaintiff's claims that he needed to wear protection and to frequently go to the bathroom did not substantially limit a major life activity); *Sepulveda v. Glickman*, 167 F. Supp. 2d 186, 191 (D. P. R. 2001) (the plaintiff's diabetes that "require[d] medication, a fixed meal schedule, timely snack breaks, and the opportunity to use the bathroom very frequently during the work day" did not constitute a

substantial limitation on a major life activity); *Williams v. H.N.S. Mgmt. Co., Inc.*, 56 F. Supp. 2d 215, 221 (D. Conn. 1999) (bus driver's need to frequently urinate due to his disabilities did not substantially limit a major life activity).

Yet, Defendants rely solely on unpublished and out-of-district cases to support their position.  Moreover, the one case cited by Defendants that is within the Sixth Circuit, *Cox v. Carrier Sales & Distrib.*, 2006 U.S. Dist. LEXIS 49705 at *32-41 (E.D. Tenn. July 20, 2006), adopted by, 2006 U.S. Dist. LEXIS 58426 (E.D. Tenn. Aug. 18, 2006), is distinguishable from that present matter.  In *Cox*, the plaintiff testified that she was "'pretty much' able to live a normal life by controlling her diet and taking insulin." *Id.* at *39.  The *Cox* plaintiff further testified that she was engaged in a "broad range of activities, including a child care business, a catering business, and the sale of clothes and jewelry out of her home." *Id.* at *41.  Finally, Cox asserted "working" as the major life activity substantially affected by her disability, but she could not show she was precluded from a "substantial class of jobs" because there were " a host of different types of  jobs" available to her and this fact under Sixth Circuit holdings would preclude the successful use of  "working" as the major life activity.

*Mahon v. Crowell* , 295 F.3d 585, 590 (6th Cir. 2002), stated its concern with the use of working as a major life activity finding that such use was problematic, yet, it acknowledged that *Henderson v. Ardco, Inc*, 247 F.3d 645, 652 (6th Cir. 2001), had held that working is a major life activity under the ADA.[3]  Yet, *Mahon* limited its use by noting:

> we shall treat [working as a major life activity] as a residual category resorted to only when a complainant cannot show she or he is substantially impaired in any other, more concrete major life activity.

[3] The Supreme Court in *Toyota Motor Mfg.,* 534 U.S. at 200, reserved ruling on whether working is a major life activity .

It then determined that:

> To be substantially limited in the major life activity of working . . . one must be precluded from more than one type of job, a specialized job, or a particular job of choice. If jobs utilizing an individual's skills (but perhaps not his or her unique talents) are available, one is not precluded from a substantial class of jobs. Similarly, if a host of different types of jobs are available, one is not precluded from a broad range of jobs.

*Id.* at 591.[4]

In addition to the unpublished district cases cited above, Defendants argue that the Sixth Circuit has held that the fact that the Plaintiff needed extra breaks during the day was not a substantial limitation on her ability to work. *Deprisco v. Delta Air Lines, Inc.*, 2004 U.S. App. LEXIS 803, 90 Fed. Appx. 790, 2004 WL 93943, (6th Cir. 2004). In *Deprisco*, the plaintiff was diagnosed with vertigo, which caused her to suffer dizzy spells and to faint at work on at least one occasion. In order to control her symptoms, plaintiff needed to frequently stand up and walk around. *Id.* at *3-7. She was terminated from her position as a reservation sales agent because she could not meet time utilization goals as a result of her need to take several breaks during her shift. The Sixth Circuit concluded that DePrisco was not disabled under *Toyota* because DePrisco was limited in her ability to perform only one kind of job where she had to sit without interruption for several hours a day with minimal breaks. *Id.* at *10. In addition, the Sixth Circuit noted that DePrisco was not prevented from doing other jobs where she could walk around more and, in fact, was qualified to do several other jobs such as flight or Crown Room

---

[4] *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 492 (1999), had also held that assuming that working is a major life activity, a claimant would be required to show an inability to work in a "broad range of jobs," rather than a specific job.

attendant. *Id.* While not citing its 2002 *Mahon* decision, the Sixth Circuit could have used it to determine DePrisco was not substantially limited in the major life activity of working because she could do a "host of different types of jobs" allowing her to move about. Nor could she show that her impairment substantially impaired her in any other, more concrete major life activity other than limited types of work.[5]

It is clear that in the present case, as in *Deprisco* and *Mahon,* Plaintiff has not demonstrated that there are not a host of different types of jobs available that could accommodate her need for bathroom breaks, such as her original position on the IP line at the stationary clip station job off the assembly line (Dkt. #30, Ex. H, p. 2-3). Thus, she cannot successfully use working as the major life activity which is substantially limited by her condition.

Citing *Bragdon v. Abbott*, 524 U.S. 624 (1998) and *LaPorta v. Wal-Mart Stores, Inc.* ,163 F. Supp. 2d 758, (W.D. Mich. 2001), Plaintiff asserts reproduction and infertility as an ADA recognized major life activity her conditions substantially limits.[6] Plaintiff contends that

---

[5] The Court noted that "she was not limited in other major life activities, such as sitting or standing".*DePrisco*., 90 Fed. Appx. at 795, 2004 WL 93943, at *4.

[6] The Supreme Court in *Toyota* noted that in addressing a disability, the court should not limit its analysis to whether the impairment limited the ability to perform the range of job related tasks, but should focus more broadly on whether the impairment limited the ability to perform tasks that are of central importance to most people's daily lives.

> When addressing the major life activity of performing manual tasks, the central inquiry must be whether the claimant is unable to perform the variety of tasks central to most people's daily lives, not whether the claimant is unable to perform the tasks associated with her specific job . . . .

There is also no support in the Act, our previous opinions, or the regulations for the

her need to frequently urinate can lead to urinary tract infections that contributed to her infertility. While these three medical conditions may have some relationship, they are separate impairments and cannot be merged or aggregated into a qualifying disability under the ADA. It is Plaintiff's need to have frequent toilet breaks without delays that is the impairment Plaintiff asserts Defendant failed to accommodate. Indeed, frequent undelayed toilet breaks minimizes the risk of Plaintiff getting a urinary tract infection. While reproductive activities are a major life activity, it was the dentist's avoidance of the patient in *Bragdon* because of AIDS and the refusal to provide a flexible work schedule for the employee in *LaPorta* to seek fertility treatment that were the alleged violations of the ADA. Here, Plaintiff's infertility, even if deemed a disability covered by the ADA, is not what Plaintiff claims needs accommodating nor what led to the adverse job action. Rather it was her frequent need to urinate.[7]

---

Court of Appeals' idea that the question of whether an impairment constitutes a disability is to be answered only by analyzing the effect of the impairment in the workplace. Indeed, the fact that the Act's definition of "disability" applies not only to Title I of the Act, 42 U.S.C. §§ 12111-12117 (1994 ed.), which deals with employment, but also to the other portions of the Act, which deal with subjects such as public transportation, §§ 12141-12150, 42 U.S.C. §§ 12161-12165 (1994 ed. and Supp. V), and privately provided public accommodations, §§ 12181-12189, demonstrates that the definition is intended to cover individuals with disabling impairments regardless of whether the individuals have any connection to a workplace.

*Toyota*, 534 U.S. at 200-01.

[7] Plaintiff's attempt to establish her alleged infertility as a basis for an ADA claim is similar to the plaintiff in *Wood v. Crown Redi-Mix, Inc.*, 339 F.3d 682 (8th Cir. 2003). The plaintiff in *Wood* fell down a hole while at work and suffered nerve damage. *Id*. at 684. The plaintiff's nerve damage caused his doctor to restrict the plaintiff from lifting in excess of fifty pounds and performing extensive bending, twisting, and lifting. *Id*. The plaintiff also claimed that the nerve damage caused his impotence. *Id*. The employer in *Wood* could not accommodate the plaintiff's restrictions and terminated his employment. *Id*. The plaintiff later filed suit claiming that he was disabled under the ADA because he was substantially limited in the major

In the present case, unlike cases such as *LaPorta*, Plaintiff's alleged infertility is not connected with her accommodation request or her ability to perform her job.[8] In addition, Plaintiff's need to frequently use the bathroom is not caused by her infertility.[9]

---

life activities of walking, standing, turning, bending, lifting, and procreation. *Id*.

The court rejected the plaintiff's argument that his inability to procreate could serve as the basis for his ADA claim. *Id*. at 686-87. The court noted that the ADA requires employers to accommodate limitations, not disabilities. *Id*. at 687. The court emphasized that:

> [w]here the reasonable accommodation requested is unrelated to the limitation, we do not believe an ADA action may lie. Put another way, there must be a causal connection between the major life activity that is limited and the accommodation sought.

*Id*.

Because Wood's request for a non-ready-mix truck job was because of limitations on his ability to lift, bend, stand, and work and not because of his inability to procreate, the plaintiff could not base his failure to accommodate claim on his inability to procreate. *Id*. The court rejected the plaintiff's reliance on *Bragdon v. Abbott*, 524 U.S. 624 (1998) (holding that procreation is a major life activity) because the Supreme Court in that case did not consider the issue before the court in *Wood*: "whether a requested workplace accommodation must be related to the limitation that serves as the only basis for the plaintiff's disability." *Id*. at n4.

[8] Plaintiff never requested an accommodation based on her infertility. Additionally, it does not appear that the issue of infertility was raised during the decision to place Plaintiff on "no work available"status (*See*, Dkt. #35, Ex. C, p. 2). Plaintiff failed to mention the issue of infertility in her EEOC Charge, Complaint, and/or First Amended Complaint. Indeed, Plaintiff fails to demonstrate that her alleged infertility had anything to do with her being placed on "no work available" status or that she was denied an accommodation based on her alleged infertility.

[9] Even assuming Plaintiff's alleged infertility is a disability, Plaintiff must be able to show that she suffered an adverse employment action "because of" that disability. *McKay v. Toyota Motor Mfg. U.S.A.*, 110 F.3d 369, 371 (6th Cir. 1997). "The ADA requires covered employers to make reasonable accommodations to the *known*, physical and mental limitations of an otherwise qualified individual with a disability." *LaPorta*, 163 F. Supp. 2d at 766 (emphasis added). Prior to this litigation, Plaintiff failed to request any type of accommodation due to her infertility and cannot show that Defendants failed to accommodate any restrictions based on her infertility. Accordingly, as a matter of law, Plaintiff's alleged infertility cannot be used to support an ADA claim.

For reasons noted above, Plaintiff cannot successfully use working as the major life activity which is substantially limited by her condition. Nor can she use reproductive limitations as the major life activity which is substantially limited by her condition that needs accommodation. Nor does she point to another more concrete major life activity that is limited by her need for frequent urination. Yet, Plaintiff's counsel points to *Workman v Frito Lay Inc*., 165 F.3d 460 (6th Cir. 1999), that suggests that the Sixth Circuit may be more open to an ADA claim based on the need for frequent, undelayed toilet breaks than the several district court cases noted above that Defendants urge this Court to follow. The *Workman* case is sufficiently close to the present situation that summary judgment is inappropriate.

In *Workman*, the Sixth Circuit refused to reverse a jury verdict in favor of the plaintiff who, like Plaintiff Wirtz, worked on a production line and required frequent and undelayed toilet breaks because she suffered from a spastic colon – "a subset of irritable bowel syndrome. It is a painful condition and manifests itself occasionally in bouts of constipation and diarrhea…" *Id*. at 463. In *Workman*, the plaintiff needed to be allowed to leave the production line immediately upon feeling the urge to defecate and neither she nor her doctors could predict how often that would happen but she would probably have to use the restroom one to four times per day. *Id*. Like the Defendants herein, Frito Lay defended its termination of Workman by stating that it could not have a replacement person ready to fill in for Workman any time she needed to use the

_____

To the extent Plaintiff attempts to rely on her alleged infertility to establish a disparate treatment claim of disability discrimination based on infertility – as opposed to a failure to accommodate – Plaintiff fails to establish that any alleged adverse employment action taken against her was because of her alleged infertility. Plaintiff does not dispute Dr. Jones' affidavit that provides that the issue of infertility was not considered when deciding to place Plaintiff on "no work available" (*See* Dkt. #35, Ex. C, p. 2). Further, Plaintiff has provided no evidence that her alleged infertility was the reason for her being placed on "no work available" status.

restroom. The jury disagreed with the defendant on all counts finding Workman to be disabled under the ADA, and finding that her request for accommodation to be reasonable.

Frito Lay appealed stating that the need to frequently use the bathroom could not, as a matter of law, be considered to constitute a disability under ADA. The Sixth Circuit disagreed stating:

> Regarding the first prong, actual disability, the jury could have decided that controlling one's bowels is a major life activity and that Workman's condition sometimes left her '[s]ignificantly restricted as to the condition, manner or duration under which [she could] perform a particular life activity as compared to…the average person in the general population' 29 C.F.R. 1630.2(j)(1)(ii), if they chose to credit evidence that she needed to be free to go to the bathroom whenever she felt the urge as an important element of her 'retraining'. [10]

*Id*. at 467.

While other courts may disagree, if "controlling one's bowels is a major life activity" there is no logical reason to conclude that "controlling one's bladder" is any less of a "major life activity." And if "controlling one's bladder" is "a major life activity" based on the facts of the present case a reasonable jury could find that Plaintiff Wirtz's "condition sometimes left her '[s]ignificantly restricted as to the condition, manner or duration under which [she could]

---

[10] Another court within the Sixth Circuit, in the Eastern District of Tennessee, also recently held that colitis and Crohn's disease, which manifested only in frequent bowel movements and limitations on what plaintiff could eat, presented a question of fact preventing the granting of summary judgment to the defendant employer which claimed that his condition adversely affected his ability to work in his job on a production line. *Boles v Polyloom Corp*, 459 F. Supp. 2d 647 (E.D. TN 2006).

Similarly, the District of Columbia Circuit refused to reverse a jury verdict where the jury found that spina bifida, the manifestation of which was incontinence and urinary tract infections, was a disability under the ADA entitling plaintiff to relief from the defendant for failure to accommodate him by permitting breaks for exercise or transfer to another position. *Swanks* v. *Washington Metropolitan Area Transit Authority*, 179 F.3d 929 (D.C. Cir. 1999).

perform a particular life activity as compared to…the average person in the general population.'
"

The average person in the general population, through regulation of fluid intake and other means not sufficient for Plaintiff Wirtz," is able to control their need to empty their bladder to extended periods of two or more hours that are accommodated by the common noon, mid-morning and mid afternoon breaks employees are provided.

Based on the jurisprudence of the Sixth Circuit summary judgment in favor of Defendants in this case on whether Plaintiff has an actual disability that qualifies under the ADA would be improper.  Here, Plaintiff alleges that she suffers in part from precisely the same disease as did Workman, Irritable Bowel Syndrome.[11]  Yet, the frequency of those flare ups (twice in 2000 and 3-4 times in 2001) are not sufficient to invoke the *Workman* precedent. Plaintiff's primary   condition relates to urination rather than defecation.  But the logic of *Workman* applies whether the significant limitation as to "the condition, manner or duration" of controlling a major life activities involves control of bowels or control of the bladder.  For both Plaintiff Wirtz and Workman the only on-the-job manifestation of either's condition is the need for frequent bathroom breaks.  Both plaintiffs worked on an assembly line and suffered from

---

[11] Albeit, Plaintiff indicated that she suffers from, IBS, only on occasion. When asked about her alleged IBS during her deposition, Plaintiff provided the following testimony:

> Q. Okay. Have you had bowel incontinence?
> A. Yes.
> Q. Is that related to this condition, this musculolateral spasms?
> A. I don't know.
> Q. When was the last time you had bowel incontinence?
> A. I've been diagnosed with IBS for quite some time, it's something I deal with on occasion.

(Dkt. #27, Ex. A, p. 129).

conditions that are chronic, persistent and permanent, and can result in pain associated with the limited ability at control. As such, in this Circuit, it is inappropriate to say as a matter of law that Plaintiff's impairment does not rise to the level of a disability within the meaning of the ADA.

### 2. *A Qualified Individual*

Defendants argue that even assuming, *arguendo*, that Plaintiff can establish that she has a disability, her claim nonetheless should be dismissed because she cannot demonstrate that she is a "qualified individual." 42 U.S.C. §12111(8). Under the ADA, a qualified individual is one "who, with or without reasonable accommodation, can perform the essential functions of the employment position." *Id.* In determining whether aspects of a job are essential, consideration shall be given to the employer's judgment as to what functions of a job are essential, and if an employer has prepared a written description before advertising or interviewing applicants for the job, this description shall be considered evidence of the essential functions of the job. 42 U.S.C. § 12111(8). Here, Defendants contend that Plaintiff is unable to produce parts according to their production goals, and is therefore not a qualified person, and cannot bring an ADA claim.

Yet, Defendants also admit that for seven years before putting Plaintiff on "no available work status" they accommodated her need to frequently use the bathroom. She was generally a production line worker and had been on the IP line for approximately a year before being placed on "no available work status." Plaintiff testified that while on the IP line she personally saw other workers who could have taken her position at the line for the times that she might need to use the restroom (Dkt. #30, Ex. A, p. 75). Moreover, there is limited evidence – and no regularly maintained records – to show that any reduction in the number of parts produced was directly related to Plaintiff's need to use the restroom (Dkt. #30, Ex. L, pp. 44-45). As Defendants admit, there were several occasions, which they cannot relate to Plaintiff, when the line did not produce

18

the "magic number" of parts.  *Id*. at 38.  Further, Defendants have failed to provide a formal job

description, which prescribes a quota nor any other documentation of an "essential function."

This issue is sufficiently open to argument that it is inappropriate for this Court to decide it as a

matter of law.

Defendants may well prevail on the issue that an "essential function" to perform this

particular production job is continuous presence and that no accommodation is feasible for one

who does not have two hour bladder control.  Yet, the facts are sufficiently in dispute that a

reasonable jury may well find, as in *Workman*, that even if continuous presence on the

production line is an "essential function" of this employment position, that the Plaintiff could

perform such a function with a reasonable accommodation, such as use of the area coordinators

for short term coverage for those needing to leave the line.  Indeed, as to "essential functions,"

Workman specifically conceded that a continuous presence was needed by someone at the line as

a necessary component of the position.  Yet, the Sixth Circuit concluded that the jury was

reasonable in finding that the defendants in that case had and could have continued to provide

relief for Workman when she needed to use the bathroom without shutting down the line, thus

demonstrating that Workman was qualified.  *Workman*, 165 F.3d at 468.

Here, Plaintiff testified that she personally saw other workers who could have taken her

position at the line when she needed to use the restroom (Dkt. #30, Ex. A, p. 75).  Defendants

also concede that they had  area coordinators, albeit with other responsibilities, that also relieved

employees on the line for unscheduled breaks or other emergencies (Dkt. #27, Ex. J, p. 37).

Moreover, Plaintiff's continued functioning in moving production line jobs for years with the

same medical needs are also evidence relevant to this question of whether she was qualified for

the job and whether Defendants had been, and could have continued to be, able to accommodate

her need to use the bathroom. Because a genuine issue of fact remains as to whether Plaintiff constitutes a qualified individual, this Court should not rule as a matter of law that Plaintiff was not qualified.

In conclusion, Plaintiff was placed on "no work available status" ("NWA") on June 27, 2002, thereby preventing her from returning to work as a regular employee. This would constitute an adverse job action related to her alleged disability.[12] Given Plaintiff's medical history and the Sixth Circuit's *Workman* case, Plaintiff is able to adequately support her claim that she suffers from a disability under the ADA to defeat Defendants' motion for summary judgement. There is also a genuine issue of material fact as to whether Plaintiff was qualified to work on the production line with a reasonable accommodation. Plaintiff has demonstrated that as a result of being placed on NWA she has been damaged through loss of wages and other benefits. Accordingly, it is **RECOMMENDED** that Defendants' motion for summary judgment be **DENIED**. Because Plaintiff's limitation with respect to reproduction bears no relationship to the accommodation she seeks, and because she has not come forward with evidence sufficient to show a history of being disabled or any evidence to show that Defendants perceived her to be disabled due to her infertility, Plaintiff has failed to make out a prima facie case of discrimination under the ADA in relation to her alleged infertility and should not be allowed to

_____

[12] Plaintiff received disability payments from Ford in the amount of approximately $1,190 per month (Dkt. #30, Ex. A, p. 52). At the time Plaintiff was placed on NWA, she was making $22.90 per hour. *Id.* at 125. She worked full-time (40 hours/week). At that rate, she was earning $3,664 per month. Moreover, Plaintiff has not subsequently received COLA and union increases to which she would have otherwise been entitled. Plaintiff has also lost the ability to receive tuition reimbursement from Ford, a benefit that she had taken advantage of in the past (Dkt. #27, p. 16). Plaintiff also stopped accruing seniority the day she was placed on NWA.

proceed on that theory.

**IV.    RECOMMENDATION**

For the following reasons, **IT IS RECOMMENDED** that Defendants' motion for summary

judgment be **DENIED** (Dkt. #27).  The parties to this action may object to and seek review of this

Report and Recommendation, but are required to file any objections within ten (10) days of

service of a copy hereof, as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2).

Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v.*

*Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir.

1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  Filing of objections which raise

some issues but fail to raise others with specificity, will not preserve all the objections a party

might have to this Report and Recommendation.  *Willis v. Sec'y of Health and Human Servs.*,

931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local*, 231, 829 F.2d

1370,1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to

be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the

opposing party may file a response.  The response shall be not more than twenty (20) pages in

length unless by motion and order such page limit is extended by the Court.  The response shall

address specifically, and in the same order raised, each issue contained within the objections.  If

the Court determines any objections are without merit, it may rule without awaiting the response

to the objections.


Dated: August 13, 2007                              s/Steven D. Pepe
Flint, Michigan                                     United States Magistrate Judge

## CERTIFICATE OF SERVICE

I hereby certify that on <u>August 13, 2007,</u> I electronically filed the foregoing paper with the Clerk  Court using the ECF system which will send electronic notification to the following: <u>John F. Birmingham, Jr., Michael W. Groebe, Jeffrey S. Kopp, Jay A. Schwartz,</u> and I hereby certify that I have mailed by United States Postal Service the paper to the following non-ECF participants: <u>Carmen Moyer, Schwartz Law Firm, 37887 W. 12 Mile Rd., Ste. A, Farmington Hills, MI 48331</u>

<u>s/ James P. Peltier</u>
James P. Peltier
Courtroom Deputy Clerk
U.S. District Court
600 Church St.
Flint, MI 48502
810-341-7850
pete peliter@mied.uscourts.gov